UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| Michael Espinosa, | Case No. 2:19-cv-01617-RFB-NJK |
| Plaintiff, | |
| v. | **ORDER** |
| Corrections Corporation of America, | |
| Defendant. | |

## I.   INTRODUCTION

Before the Court for consideration are Defendant's Motion for Summary Judgement on Statute of Limitations, ECF No. 30, Plaintiff's Motion for Hearing Before a District Judge, ECF No. 38, Defendant's Motion for Leave to File a Supplement to ECF Nos. 30, 35, ECF No. 40, Defendant's Motion for Summary Judgment, ECF No. 47, Plaintiff's Motion for Summary Judgment on Causation, ECF No. 48, and Second Motion for Leave to File a Supplement to ECF No. 30, ECF No. 49. The Court hereby denies [38] Motion for Hearing before a District Judge as moot. Good cause being found, the Court will grant and consider evidence in [40], [49] Defendant's motions for leave to file a supplement to their summary judgment motions. A written order considering [30], [47], [48] Motions for Summary Judgment follows.

## II.   PROCEDURAL BACKGROUND

This matter arises from a claim of negligence and gross negligence for a lack of medical treatment against Defendant Corrections Corporation of American aka CoreCivic. CoreCivic operates a detention center know as Nevada Southern Detention Center (NSDC). Plaintiff filed his

first Complaint arising out of his medical care treatment at NSDC on December 4, 2017 in the Eighth Judicial District Court, Clark County. ECF No. 5-2. Plaintiff had until April 3, 2018 to serve Defendants but failed to do so. Instead, Plaintiff filed a First Amended Complaint ("FAC") on April 10, 2018. ECF. No. 5-3.

Plaintiff served the amended complaint on Defendants CoreCivic on April 30, 2018 and CoreCivic moved to dismiss the FAC for failure to timely serve the original Complaint. ECF No. 5-4. On July 18, 2018, the Eighth Judicial District Court ultimately denied the Motion to Dismiss, finding that Plaintiff had demonstrated good cause for failing to serve CoreCivic within 120 days of filing the original Complaint. ECF No. 5-6.

CoreCivic petitioned for a Writ of Mandamus and the Nevada Court of Appeals granted the petition on December 21, 2018 and directed the Clerk of the Court to issue a Writ of Mandamus instructing the district court to vacate the Order denying CoreCivic's Motion to Dismiss and enter an Order dismissing the case. ECF No. 5-7.

On August 1, 2019, Plaintiff filed a Complaint in this matter, including identical claims from previous complaints that Defendants acted with negligence and gross negligence in providing medical care to Plaintiff. ECF No. 1-1.

Defendants filed a petition for removal from the Eighth Judicial District on September 13, 2019. ECF No. 1. On September 20, 2019, Defendants filed a Motion to Dismiss. ECF No. 5. Plaintiff filed a response on October 10, 2019 and Defendants filed a reply on October 17, 2019. ECF Nos. 8, 12.

On October 15, 2020, this Court denied Defendants' motion to dismiss and lifted the stay in this case. ECF No. 21. The Court found that the claims for negligence and gross negligence could potentially proceed under two Nevada state statutes: the medical negligence statute for

claims regarding medical professionals, Nev. Rev. Stat. § 41A.097(2)(a), and the negligence statute regarding non-medical prison staff who allegedly contributed to the delay in Plaintiff receiving adequate medical treatment under Nev. Rev. Stat. § 11.190(4)(e). Although the Court recognized that there were potentially statute of limitations issues under both statutory provisions, the Court denied dismissal to allow discovery on the issue of the "discovery" date of the injury and as to whether equitable tolling was appropriate in this scenario. A scheduling order was granted on October 30, 2020. ECF No. 27.

On May 25, 2021, Defendants filed a Motion for Summary Judgment on Statute of Limitations. ECF No. 30. On July 1, 2021, Plaintiff filed a motion for hearing before the District Judge. ECF No. 38. On July 7, 2021, Plaintiff filed a motion for Leave to File Re: CoreCivic's Motion for Leave to Supplement Motion for Summary Judgment on Statute of Limitations. ECF No. 40. On September 10, 2021, Defendant filed another Motion for Summary Judgment on the merits of the case. ECF No. 47. On September 10, 2021, Plaintiff filed a Motion for Summary Judgment on Causation. ECF No. 48. On September 21, Plaintiff filed a Second Motion for Leave to File Re: CoreCivic's Motion for Leave to Supplement Motion for Summary Judgment on Statute of Limitations. ECF No. 49. The latter motions were fully briefed as of October 15, 2021. ECF Nos. 50, 51, 52, and 53.

On February 14, 2022, the Court held oral argument on all outstanding motions. ECF No. 55. ECF Nos. 38, 40, 49 are resolved above. This written order follows on the outstanding summary judgment motions.

### III.   FACTUAL BACKGROUND
#### a. Undisputed Facts

The following facts are undisputed. On or about December 9, 2015, Plaintiff sustained an injury to his heel when he jumped over a wall in an attempt to avoid arrest. Immediately thereafter,

- 3 -

he was taken into custody by the Las Vegas Metropolitan Police Department for robbing a bank.

Plaintiff was then transported to the Emergency Department at University Medical Center, where he was diagnosed with an "intraarticular fracture of unspecified calcaneus" and was informed to follow up with Dr. Gerald Sylvain in one to three days. Plaintiff was detained at Clark County Detention Center for approximately one month but was not seen by Dr. Sylvain during that time.

Upon release from Clark County Detention Center on January 6, 2016, Plaintiff was admitted to NSDC as a United States Marshals Service pre-trial detainee. Defendant CoreCivic provides medical care at NSDC and did so during Plaintiff's detention at NSDC.

Plaintiff's Initial Intake Screening noted that Plaintiff had a crushed left heel from three weeks prior and that Plaintiff was being assigned to a Chronic Care Clinic. The next day, on January 7, 2016, Plaintiff submitted a Sick Call Request ("SCR") asking to see a doctor "ASAP" for his "broken heel." He further stated that he transferred from CCDC and had the problem for "1 month." Medical personnel responded on January 8, 2016 and informed Plaintiff that he would be scheduled to follow up with Dr. Saavedra for an evaluation/orthopedic referral. He was also prescribed 600 mg of Ibuprofen.

On January 12, 2016, Plaintiff was seen for orthopedic injuries by Licensed Practical Nurse ("LPN") R. Crowder. Plaintiff indicated to LPN Crowder that his pain was a 10 on a scale of 1-10. LPN Crowder instructed Plaintiff on rest, ice, compression bandages, and to elevate his ankle, and to follow up with an SCR if he saw no improvement in four days. Plaintiff verbalized his understanding. LPN Crowder also set a task for Plaintiff to be seen by the doctor.

On January 13, 2016, Plaintiff submitted an Inmate/Resident and identified grievance category 7 (medical services) requesting a follow up with a doctor and indicating that he had been

told he needed surgery.

On January 17, 2016, Plaintiff was seen by Dr. Saavedra, who noted that Plaintiff wanted a referral to a specialist and to remain in a wheelchair. Dr. Saavedra assessed Plaintiff with a left foot/ankle injury, especially laterally, and referred Plaintiff to Dr. Sylvain, an orthopedic doctor. He also stated it was necessary to obtain Plaintiff's medical records from University Medical Center so that the records could accompany Plaintiff during the visit. Dr. Saavedra planned to follow up with Plaintiff after the orthopedic evaluation.

On February 3, 2016, Plaintiff was transported to an outside consult with Dr. Sylvain. Plaintiff reported that he had fallen off a fence of about 20 feet and had a "displaced left calcaneus fracture." Dr. Sylvain observed that Plaintiff was in "no acute distress," that "all toes move up and down," he had "good capillary refill," and his "ankle moves up and down." An x-ray taken that day confirmed Plaintiff had a "displaced left calcaneus fracture." Dr. Sylvain discussed treatment options with Plaintiff.

Upon his return to NSDC, Plaintiff was seen by medical staff, who consulted with Dr. Saavedra by phone regarding Dr. Sylvain's recommendation that the splint be discontinued, that Plaintiff start gradual weight, and that Plaintiff be referred to Dr. Sep Bady.

On February 4-14, 2016, Plaintiff submitted Inmate/Resident Grievances identifying his need for treatment and surgery. He submitted a total of six grievances in this period.

On February 16, 2016, Plaintiff was seen by Dr. Bady, who assessed Plaintiff and reviewed the x-rays. He discussed with Plaintiff that his fracture was "severe" and he needed immediate three-dimensional CT scan of the heel and ankle" and to "see a sub specialist who is an expert in calcaneus fractures, Dr. Roman Sibel." Dr. Bady also advised that Plaintiff "should not walk" on his foot until a definitive diagnosis and treatment plan were established. That same day, Dr.

Saavedra ordered a 3D CT scan of Plaintiff's left foot and ankle, and further noted that Plaintiff would be referred to Dr. Sibel once the CT was obtained.

On February 22, 2016, Plaintiff filled out a NSDC Detainee Request form asking to be seen by a specialist. On February 23 and 24, he submitted two additional grievances.

On March 3, 2016, Plaintiff received the CT scan of his foot. On March 8, 2016, Plaintiff was transported to an outside consult with Dr. Sibel. Dr. Sibel noted that it had "been about three months from the time" of Plaintiff's injury, he "continues to have pain, symptoms, swelling, and feelings of instability, and has difficulty ambulating." Dr. Sibel further noted that Plaintiff was seeing him for "initial management" of his condition. Dr. Sibel did not think there was "much indication" for "re-creating the fracture patterns" or "trying to reestablish the joint line." Further, "if any surgery is to be entertained[,] this would be for a distraction subtalar arthrodesis, decompression of his lateral wall and peroneal mechanism, and likely formal tendo-Achilles lengthening given the degree of shortening" that was seen with Plaintiff's "posterior tuber fragment essentially having been free floating." The indications for the procedure as well as potential risks were discussed with Plaintiff. Plaintiff was scheduled for surgery on March 28, 2016 and for a follow-up consultation with Jeromy Mendenhall, PA-C, thereafter.

Plaintiff's surgery occurred on March 28, 2016. He was directed to follow up with Dr. Sibel in two weeks. Plaintiff was kept under medical observation at NSDC from March 27 to March 29, 2016. On April 12, 2016, Plaintiff had an outside consult with Jeromy Mendenhall in Dr. Sibel's office. On May 12, 2016, PA Mendenhall referred Plaintiff for three physical therapy visits per week for four weeks. Plaintiff attended 12 sessions of physical therapy from May 23 through June 17, 2016.

On June 22, 2016, Plaintiff had a follow-up appointment with PA Mendenhall, who noted

that examination "of the left foot shows the incision is well healed without erythema or drainage. [Plaintiff] does have swelling specifically over the lateral aspect of the ankle. Has a palpable DP and PT pulse and his gross sensation intact. He gets the ankle to neutral but not much past that." PA Mendenhall recommended that Plaintiff "continue with physical therapy and physical therapy exercises."

On August 3, 2016, Plaintiff was seen again by Jeromy Mendenhall. Mr. Mendenhall's report notes that Plaintiff complained about not getting physical therapy since his last visit and states that Plaintiff was frustrated that he continues to have pain that was "not getting better" according to the notes. Mr. Mendenhall's notes state the following conclusion based on his consult: "I think part of his symptoms are due to the fact that he is just over 4 months out from surgery and the other part of this is that he has not had adequate amount of rehabilitation while being incarcerated. He also has a permanent level of deformity to the foot secondary to the malunion of the calcaneus fracture. This is an unfortunate situation for the patient. It is the reality, however, in which he finds himself." Plaintiff was prescribed another round of physical therapy and completed ten additional sessions between August 10, 2016 and September 2, 2016. Plaintiff was permanently transferred from NSDC to the custody of the Bureau of Prisons on September 6, 2016.

    b. **Disputed Facts**

The Court does not find there to be a genuine dispute of material fact. The parties dispute the legal effect of the circumstances, namely, whether Defendant's actions met the standard of medical care required. They also disagree regarding the threshold issue of the statute of limitations and whether equitable tolling applies.

**IV.**    **LEGAL STANDARD**

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322(1986). The substantive law governing a matter determines which facts are material to a case. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).

When considering the propriety of summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. Gonzalez v. City of Anaheim, 747 F.3d 789, 793 (9th Cir. 2014). If the movant has carried its burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts …. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (alteration in original) (internal quotation marks omitted).

It is improper for the Court to resolve genuine factual disputes or make credibility determinations at the summary judgment stage. Zetwick v. Cty. of Yolo, 850 F.3d 436, 441 (9th Cir. 2017) (citations omitted).

V. **DISCUSSION**

Defendant seeks summary judgment as to both claims on statute of limitations. In the alternative, Defendant seeks summary judgment on the merits, arguing that Plaintiff can establish neither breach nor causation. Plaintiff argues that he is entitled to summary judgment on the issue of causation and asks the Court to recognize that his claims of negligence and gross negligence amount to an Eighth Amendment violation.

   a. **Statute of Limitations**

As discussed above, the Court found that Plaintiff's claims fell under two separate statutes: the medical negligence statute, Nev. Rev. Stat. § 41A.097(2), and the general statute of limitation for negligence claims, Nev. Rev. Stat. § 11.190(4)(e). Under Nev. Rev. Stat. § 41A.097(2), "an action for injury or death against a provider of health care may not be commenced more than 3 years after the date of injury or 1 year after the plaintiff discovers or through the use of reasonable diligence, should have discovered the injury, whichever occurs first…" Under Nev. Rev. Stat. § 11.190(4)(e), an "action to recover damages for injuries to a person…caused by the wrongful act or neglect of another" must be commenced within two years.

Defendant argues that Plaintiff's claims are time-barred under both the one-year and the two-year statute of limitations. Defendant argues that at the absolute latest Plaintiff discovered his injury and, therefore, his right to bring this claim was on September 30, 2016, the date his attorney sent a letter to CoreCivic's counsel regarding Plaintiff's permanent disability. ECF No. 40-1. They argue that Plaintiff would have needed to bring this claim by September 30, 2017 or September 30, 2018 to preserve his rights under the statute of limitations. Plaintiff argues that there is a genuine issue of material fact as to the timing of discovery of the injury.

The Court finds that there is no genuine dispute of material fact preventing this Court from deciding the statute of limitations issue as a matter of law. The key issue here is the date of discovery of the injury. Because the type of injury from an omitted action is one that happens over time, Nevada law has established that its "discovery" is the best means to determine when the injury occurred. See Massey v. Litton, 669 P.2d 248 (Nev. 1983). ("The discovery of legal injury may be either actual or presumptive, but it must be of both the fact of damage suffered and the realization that the cause was the health care provider's negligence.") Under the discovery rule, the statutory period of limitations is tolled until the injured party discovers or reasonably should have

discovered facts supporting a cause of action. Bemis v. Estate of Bemis, 114 Nev. 1021, 1024 (Nev. 1998).

The following facts regarding key discovery dates are undisputed: first, the Plaintiff initially injured himself on December 9, 2015. He was transferred to NSDC on January 6, 2016. He had surgery on March 28, 2016. He was transferred out of NSDC on September 6, 2016. His attorneys wrote a letter to CoreCivic on September 30, 2016. In pertinent part, that letter read, "The law office of Mueller, Hinds and Associates has been retained to represent Michael Espinosa, an inmate housed at the Nevada Southern Detention Center. . . .Mr. Espinosa's injury healed improperly and now is medically classified as a permanent disability. . . .as a result, he is permanently deformed." ECF No. 40-1. Finally, the initial state court lawsuit was commenced on December 4, 2017. The complaint in this lawsuit including the same cause of action for negligence and gross negligence in providing medical care was filed on August 1, 2019.

It is clear that the discovery date of the injury is no later than September 30, 2016. By this time, Plaintiff had endeavored to hire lawyers and was able to communicate to them that he had a permanent injury that he was attributing to conduct by Defendant. The letter indicates without a doubt that by that point at the very latest, Plaintiff was aware of the injury on which he bases this suit. Even if Plaintiff did not discover the fullest extent of his injury until he left federal custody in May 2018, Nevada law supports the finding that a cause of action accrues at the time of initial discovery of an injury, not at the time when the most severe consequences are discovered. See, e.g., Dreyer-Lefevre v. Morissette, 2011 Nev. Unpub. LEXIS 1031, *7-8 (Nev. 2011).

As a result, Plaintiff had until September 30, 2017 and September 30, 2018 to meet the one- and two-year limitations. The present suit was not filed until August 1, 2019, well outside both statutes of limitations. Even the initial lawsuit, filed in December 2017 and ultimately

dismissed for failure to properly serve, was untimely with respect to the one-year statute of limitations. That lawsuit would have been timely with respect to the two-year limitation, but no authority allows this Court to relate back the filing of the second lawsuit to the filing of the first. The "relation back" doctrine allows a party to relate an amendment of the original complaint back to the date of the original pleading for the purpose of statutes of limitations. See Fed. R. Civ. P. 15(c), Nev. R. Civ. P. 15(c), see also Goodman v. United States, 298 F.3d 1048, 1053 (9th Cir. 2002), Costello v. Casler, 254 P.3d 631 (Nev. 2011). However, "relation back" applies only in the context of amendment to the original pleadings, not to entirely new lawsuits, as is the case here. It would be procedurally improper to allow this suit to relate back to the earlier one. Further, no alternative doctrine or authority has been identified by the parties or this Court that might allow for the suit to exceed the statute of limitations. As a result, both possible claims are outside of their respective statutes of limitations.

### b. Equitable Tolling

Although the claims are outside the statute of limitations, statutes of limitations may be equitably tolled. See, e.g., Kwai Fun Wong v. Beebe, 732 F.3d 1030 (9th Cir. 2013). Defendant argues that Plaintiff is not entitled to equitable tolling because the failure of his attorney to timely file and/or serve the complaint does not constitute "extraordinary circumstances" for the purposes of equitable tolling. See Lawrence v. Florida, 549 U.S. 327, 336-37 (2007). Plaintiff argues that he is entitled to equitable tolling because there is a genuine dispute of material fact as to when his cause of action was discovered and because this case presents the basis of a fraudulent concealment claim. Plaintiff argues that fraudulent concealment allows tolling of statutes of limitations when a Plaintiff could not have known about a cause of action because the Defendant concealed its conduct, preventing the plaintiff from discovering the cause of action within the limitations period.

The Ninth Circuit generally recognizes equitable tolling claims in two circumstances: (1) where the Plaintiff was prevented from asserting their claims by wrongful conduct on the part of the defendant and (2) when extraordinary circumstances beyond the Plaintiff's control made it "impossible to file the claims on time." Seattle Audubon Soc. v. Robertson, 931 F.2d 590, 595 (9th Cir. 1991). Both situations presuppose reasonable diligence by the Plaintiff in pursuing the claim. See Holland v. Florida, 560 U.S. 631, 649 (2010), see also Seattle Audubon Soc., 931 F.2d at 595. With regard to the showing of "extraordinary circumstances," a "garden variety claim of excusable neglect. . . .such as a simple miscalculation that leads a lawyer to miss a filing deadline does not warrant equitable tolling." Holland, 560 U.S. at 651-652 (internal citations omitted). Instead, a litigant must show that "extraordinary circumstances were the cause of his untimeliness and made it impossible to file the document on time. . . .equitable tolling is typically granted when litigants are unable to file timely documents as a result of external circumstances beyond their direct control." Kwai Fun Wong, 732 F.3d at 1052 (internal citations omitted).

Three factors preclude equitable tolling in this situation. First, as discussed at length above, there is no genuine dispute of material fact over discovery of the injury that would counsel in favor of tolling the statute of limitations here.

Second, no extraordinary circumstance occurred here. Plaintiff centers his equitable tolling argument around the first state court case, commenced in December 2017. In that case, Plaintiff failed to timely serve Defendants and Defendants moved to dismiss the case pursuant to this failure. That motion was initially denied by Judge Denton, but Defendants filed timely notice of intent to file a petition for a writ of mandamus in the Nevada Supreme Court. That writ was granted and the original action was dismissed in February of 2019. On August 1, 2019, Plaintiff filed this action in state court. Plaintiff argues that they are entitled to equitable tolling because they could

not have known that they were required to refile their initial lawsuit while the writ was pending before the Supreme Court of Nevada.

However, Plaintiff is mistaken about what circumstances the doctrine of equitable tolling protects: it protects litigants who, despite their best efforts, were unable to file their claims in a timely fashion because of "extraordinary circumstances" entirely beyond their control. No such circumstance is present here. To the extent that the events that occurred around the original suit are a relevant consideration here, Plaintiff's attorney's failure to timely serve in the original suit is not a basis for tolling the statute. See, e.g., Eriksen v. Serpas, 478 Fed. Appx. 368, 370 (9th Cir. 2012) (finding that failure to serve is not a basis for equitable tolling). It is the kind of "garden variety" mistake, miscalculation, or failure to exercise reasonable diligence that Holland was designed to preclude. Plaintiff has not submitted evidence or made any clear allegations that they were unable to timely file documents as a result of "external circumstances beyond their direct control." Kwai Fun Wong, 732 F.3d at 1052.

Finally, Plaintiff has not demonstrated that they were prevented from asserting their claims due to wrongful conduct on the part of the Defendant. Plaintiff argues that Defendant fraudulently concealed its conduct, preventing the Plaintiff from discovering the cause of action during the limitations period. When a plaintiff remains in ignorance of the fact of his claim through defendants' fraudulent concealment of those facts, without any fault of lack of due diligence on the Plaintiff's part, the limitations period can tolled until the discovery of defendant's fraud. See Holmberg v. Armbrecht, 327 U.S. 392, 396-397 (1946). The doctrine applies in situations where defendant has concealed facts essential to plaintiff's claim. See Id. Here, there are no facts that would support such a claim, nor are there plausible allegations that Defendant concealed facts from Plaintiff that would be necessary for him to bring his claim. On the contrary, there is ample

undisputed evidence that at least one doctor provided to the Plaintiff by the Defendant disclosed the key fact in this case to Plaintiff. See Plaintiff's Response to Interrogatory No. 16, ECF No. 49-2 ("Interrogatory No. 16: Please state the factual basis for your contention that your injury is permanent, and the name, profession, and specialty, if any, of any medical and/or mental health provider who has provided you with any information that has led you to believe that your injury is permanent. Response to Interrogatory No. 16: . . . . Dr. Sibel has stated that I have a permanent level of deformity to the foot secondary to the malunion of the calcaneus fracture.") Further, there is evidence that Plaintiff had this information as of the date of his original complaint on December 4, 2017. See Original Complaint, ECF No. 5-2, ¶ 37 ("On or about August 3, 2016, Plaintiff's treating physician noted that Plaintiff has not had adequate rehabilitation, and as a result he has a 'permanent level of deformity to the foot secondary to the malunion of the calcaneous fracture.'") It is unclear, what other facts, if any, Plaintiff believes were concealed from him until after the statute of limitations had run. However at this stage, bare allegations of concealment without any evidence are not sufficient to withstand a motion for summary judgment, particularly where Plaintiff was on notice that he must come forward with all his evidence. See Sauter v. Nevada, 1998 U.S. App. LEXIS 8017, *4-5 (9th Cir. 1998) (citing United States v. Allen, 578 F.2d 236, 237 (9th Cir. 1978)). Given that Plaintiff had enough information at a stage where the claims were still timely to include this allegation in the original complaint, Plaintiff fails to satisfy the requirement of a fraudulent concealment claim.

Accordingly, Plaintiff has not established a basis for entitlement to equitable tolling. Plaintiff has failed to show that there is a genuine dispute of material fact that could counsel in favor of equitable tolling. Plaintiff has further failed to show that there are extraordinary circumstances or that wrongful conduct prevented the Plaintiff from bringing a claim sooner.

Accordingly, Plaintiff's claims for negligence and gross negligence against medical professionals and Defendant's non-medical employees are barred by the statute of limitations. As a result, summary judgment is properly granted in favor of Defendant.

### VI.  CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Hearing Before a District Judge (ECF No. 38) is DENIED as moot.

Good cause being found, **IT IS FURTHER ORDERED** that Defendant's Motion for Leave to File a Supplement to ECF Nos. 30, 35 (ECF No. 40) and Defendant's Second Motion for Leave to File a Supplement to ECF No. 30 (ECF No. 49) are GRANTED.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment on Statue of Limitations (ECF No. 30) is GRANTED in full consistent with this order.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (ECF No. 47) on the merits is DENIED as moot.

**IT IS FURTHER ORDERED** Plaintiff's Motion for Summary Judgment (ECF No. 48) is DENIED in full consistent with this order.

The Clerk of the Court is directed to close this case.

DATED: March 23, 2022.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**